The Inhabitants of SANFORD *v.* The Inhabitants of HOLLIS.

The *wife* of an alien, having her lawful settlement in this State, together with their *children*, being paupers, are to be supported by the town where that settlement may be;—though the husband, and of course the family may require and receive relief as paupers in the first instance from another town, in which they happen to reside, under *Stat.* 1821, *ch.* 122, *sec.* 18.

This was an action of *assumpsit* for the support of *Joseph Temple* and his family as paupers, and came before the Court upon a case stated by the parties.

*Temple* was an alien born, having no legal settlement in *Massachusetts*. His wife, at the time of the marriage, had her settlement in *Hollis*; but at the time of passing the act of *March* 21, 1821 respecting the settlement and support of the poor, and for several years previous, they resided as housekeepers, with their family, in *Sanford*.

From *May* 1818 to *April* 13, 1819 they were supported by *Sanford*, for which support an action was brought against *Hollis*, which the latter town adjusted by payment of the debt and

Sanford v. Hollis.

costs; and at the same time entered into contract with an individual in *Sanford*, to supply them with necessaries at the expense of the town of *Hollis*, which he continued to do from that time till *September* 22, 1821, and was paid accordingly; the paupers residing in *Sanford* during all this period, with the consent of the inhabitants of *Hollis*. *Temple* was put on the list of State-paupers, soon after he first became chargeable in *Sanford*, at the request of the inhabitants of *Hollis*, who received of the State the expenses of his support, till *March* 21, 1821.

On the 21st of *September* 1821 *Hollis* rescinded the contract made for the support of the paupers, for whose subsequent expenses this action was brought. The legal notice and reply were admitted.

*Burleigh*, for the plaintiffs.

*Temple*, being a foreigner, must be supported in the town where his wife has her settlement; and the fact of their being *at board* in *Sanford*, *at the expense of Hollis*, does not vary the case, for that very reason. Upon any other construction of the statute, the husband and wife will be separated, which is not to be permitted.

*Shepley*, for the defendants.

The *Stat.* 1821, *ch.* 122. *sec.* 18. requires overseers of the poor to relieve and support " all poor persons residing or found " in their towns, having no lawful settlements within this State." *Temple* was " residing and found" within *Sanford*;—and the words of the Statute being thus satisfied, *Sanford* is bound to support him. The provisions respecting the settlement and support of the poor are arbitrarily assumed, and therefore always receive a literal construction. There is no moral obligation, no right or wrong, in the case. The only subject of inquiry is the literal meaning of the law. *Townsend v. Billerica*, 10 *Mass.* 414. *Billerica v. Chelmsford*, 10 *Mass.* 397.

The wife's settlement in *Hollis* makes no difference. That town had paid something for their support, tis true; but it was under a mistake as to their legal rights. They were not bound to support the paupers till they were *removed* to *Hollis*. 13 *Mass.* 504.

The adjudged cases are, that the husband and wife shall not be separated. The statute says that a poor foreigner shall be supported by the town where he is "residing or found;"—and if so, then his family also, for they cannot be taken from him. Thus the law is consistent. It is the *temporary* settlement of the foreigner,—determined, like all cases of *permanent* set- tlement, by the mere arbitrary and positive enactments of the statute; and carrying with it, as in all other cases, the settle- ments of his family.

*Burleigh*, in reply.

A foreigner gains no *settlement*. The words of the statute, *sec.* 18. are, "having no *settlement*." And if he has none, he can give none to the wife; and therefore she does not lose the settlement which she had at the time of the marriage, which was in *Hollis*. *Shirley v. Watertown*, 3 *Mass.* 323. *Hallowell v. Gardiner*, 1 *Greenl.* 93.

MELLEN C. J. delivered the opinion of the Court.

By the statement of facts it appears that *Joseph Temple* is a foreigner by birth, and has never gained any settlement in *Massachusetts*. It also appears that his wife, at the time of her marriage with him, had her legal settlement in *Hollis*.

It was contended by the counsel for the defendants that *Joseph Temple*, since the separation of *Maine* from *Massachusetts*, had gained a settlement in *Sanford* by residing with his family in that town on the 21st of *March* 1821, being the day on which the act relating to the poor was enacted in this State.—In the *seventh* mode, pointed out in the second section, of gaining a set- tlement it is provided thus :—" Any person resident in any town " at the date of the passage of this act, who has not within one " year previous to that date received support or supplies from " some town as a pauper, shall be deemed to *have a settlement* in " the town where he then dwells and has his home." It ap- pears that *Temple*, though living at that time in *Sanford*, had re- ceived support and supplies within one year previous to the passing of the act. Of course he gained no settlement in this manner.

It was next contended that he had gained one, in virtue of the 18th section of the act abovementioned.—The part of the section relied on is in these words:—" Be it enacted that said " Overseers shall also relieve and support, and, in case of their " decease, decently bury, all poor persons residing or found in " their towns, having no lawful settlements within this State, " when they stand in need; and may employ them, as other " paupers may be; the expense whereof may be recovered of " their relations, if they have any chargeable by law for their " support, in manner herein before pointed out; otherwise it " shall be paid out of the respective town-treasuries."—This section, is not designed to designate the mode of gaining a set-tlement.—It proceeds on the ground that the persons supplied have no legal settlement in the State.—Besides, the second sec-tion of the act points out the several modes of gaining legal settlements and provides that they shall not be gained " other-" wise."

As the husband has never gained any settlement in this State, the settlement of the wife has not 'been " lost or suspended by " the marriage"—and for the same reason, the children " follow " and have the settlement of the mother"—according to the provisions of the second section as to the *first* and *second* mode of gaining settlements.

But it was further urged that, even if the wife and children must be considered as having their settlements in *Hollis*, still nothing can be recovered in this action, inasmuch as they have not been *removed* from *Sanford* to *Hollis*.—This objection was supposed to be founded on the decision in the case of *Cam-bridge v. Charlestown*, cited in the argument. Upon looking in-to that case, it appears to have been a question depending upon a clause in the *first* mode pointed out in the second section of the act of *Massachusetts* of 1793, *ch.* 34. which is in these words,—" And in case the wife shall be removed to her settle-" ment, and the husband shall want relief from the State, he " shall receive it in the town where his wife shall have her set-" tlement, at the expense of the Commonwealth."—As it was not intended by our Legislature, at the time they revised the poor laws of *Massachusetts*, that any paupers should be supported by the State, the clause above quoted was struck out, and not

enacted; inasmuch as it would not comport with the system which was adopted.

The result of this examination is, that the plaintiffs are entitled to recover the expenses incurred by them in supporting the *wife* and *children* of *Joseph Temple ;* but *not Temple himself—* and judgment must be entered accordingly.